## Moore Nomination Petition.

Argued March 16, 1972.   Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Ronald M. McCaskill,* for appellant.

*Gregory M. Harvey,* with him *Morgan, Lewis & Bockius,* for appellee.

OPINION BY MR. JUSTICE POMEROY, May 25, 1972:

This appeal is from an order of the Commonwealth Court sustaining objections to and setting aside nomination petitions to have the name of appellant, Cecil B. Moore, certified for printing upon the official primary ballot of the Democratic Party as a candidate for the office of Representative in Congress from the 3rd Congressional District of the Commonwealth of Pennsylvania.   Following argument, we entered a final order (Mr. Justice NIX dissenting) affirming the disposition below and noting that an opinion would follow.

The appellant does not challenge the lower court's determination on the merits;[1] his sole contention is that

---

[1] The Pennsylvania Election Code, Act of June 3, 1937, P. L. 1333, art. IX, §912, as amended, 25 P.S. §2872, requires a nomina-

the lower court lacked jurisdiction to continue the hearing first fixed in this matter in order to afford the respondent-objector, William J. Green, additional opportunity to effect service of process of his objections to the nominating petitions.

The pertinent facts as found by the Commonwealth Court and reported in its opinion in support of the order sustaining respondent's petition to set aside the nomination petitions are as follows: On February 15, 1972, the last day allowable by statute,[2] appellant filed with the Secretary of the Commonwealth and with the Commonwealth Court the nomination petitions on his behalf, directed to the Democratic Congressional Primary Election to be held April 25, 1972. On February 22, the respondent, a Democrat and the incumbent Representative for the 3rd Congressional District, filed objections to the Moore nomination petitions. The following day, February 23, the court ordered that a hearing on the objections be held February 28 and directed that notice of the time and place of said hearing, together with a copy of the objections, be served personally upon the appellant or upon an adult member of his family by February 25. The hearing was convened on February 28 as ordered, at which time appellant's attorney entered a "special appearance" to challenge the manner of personal service on his client. Respondent introduced an affidavit of service of one Stephen K. Lubell, supplemented by Lubell's direct testimony, to the effect that on the 24th of February Lubell had entered appellant's law office in Philadelphia and there handed copies of the objections and the notice of

---

tion petition for a Representative in Congress to be signed by at least 200 registered and enrolled members of the candidate's party. The Commonwealth Court found and determined that 83 of the 259 signatures on the appellant's nominating petitions were invalid.

[2] Section 913 of the Election Code of 1937, 25 P.S. §2873.

hearing to one Jones, who held himself out as an agent authorized to receive service.[3]

The trial judge before whom the hearing was held, apparently in response to the appellant's challenge to the service of process but without ruling that service was improper or inadequate, upon his own motion continued the hearing until March 1, and directed that service be made on or before February 29.[4] At the same time he amended the earlier order to allow service not only upon the candidate personally or an adult member of his family, but also upon a person in charge of appellant's law office or place of business. Service was effected shortly after noon on February 29 when copies of the objections and court order of February 28 were handed to appellant personally. On March 1, counsel for appellant again appeared specially to contest jurisdiction. This time he did not dispute the return of personal service, but asserted that the court was without power to issue its February 28 order continuing the hearing and allowing further time for service. Upon conclusion of his argument, counsel for appellant withdrew and the hearing proceeded on the merits *ex parte*. Later the same day the court entered the order appealed from, which both dismissed the challenge to jurisdiction and set aside appellant's nomination petitions. Following a denial of rehearing, this appeal was taken.

---

[3] Appellee contends that the February 24 service was in substantial compliance with the order of court of February 23 and was therefore valid. Even if this is so, which we do not decide, the court's later grant of a continuance beyond the statutory time limits, if improper, would invalidate the proceedings. As the service ultimately made was concededly valid, only the question of the validity of the continuance merits our attention.

[4] The memorandum opinion of Judge KRAMER, the trial judge, states: "The purpose of this continuance was to afford the candidate notice of the hearing and to accommodate the candidate in providing additional time to prepare for the hearing."

The Pennsylvania Election Code, *supra,* note 1, §977, 25 P.S. §2937, provides in pertinent part as follows: "All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court of common pleas of the county in which the nomination petition or paper was filed, specifically setting forth the objections thereto, and praying that the said petition or paper be set aside. A copy of said petition shall, within said period, be served on the officer or board with whom said nomination petition or paper was filed. Upon the presentation of such a petition, the court shall make an order fixing a time for hearing which shall not be later than ten days after the last day for filing said nomination petition or paper, and specifying the time and manner of notice that shall be given to the candidate or candidates named in the nomination petition or paper sought to be set aside. On the day fixed for said hearing, the court shall proceed without delay to hear said objections, and shall give such hearing precedence over any other business before it, and shall finally determine said matter not later than fifteen (15) days after the last day for filing said nomination petitions or papers."[5]

Appellant's first argument is that under §977 of the Election Code the lower court was powerless to continue from February 28 to March 1 the hearing originally scheduled for the earlier date. His point is that under the statute the time for hearing on objections is

---

[5] The jurisdiction previously exercised by the Court of Common Pleas of Dauphin County has been transferred to the Commonwealth Court by the Appellate Court Jurisdiction Act of 1970, Act of January 6, 1970, P. L. (1969) 434, §508(a)(57), 17 P.S. §211.14 (a)(57).

to be "not later than ten days after the last day for filing said nomination petition or paper", and that March 1 was beyond this period.

As with many statutorily prescribed times for the doing of certain acts, the question presented is whether the times in the quoted portion of Section 977 are mandatory or only directory. The question has been previously raised and decided by our Court. In *American Labor Party Case*, 352 Pa. 576, 44 A. 2d 48 (1945), the Court observed: "Clearly the legislature intended all provisions of Section 977 to be mandatory. It could not, however, constitutionally impose upon the courts mandatory duties pertaining to the exercise of the judicial function: Socialist Labor Case, supra, 80 [332 Pa. 78, 80]. As applied to all others, the provisions are mandatory." The Court in *American Labor Party Case, supra,* held, accordingly, that the requirement that a petition specifying objections to a nomination petition be filed "within seven days after the last day for filing said nomination petition or paper" is mandatory. On the other hand, the statutory stipulation that the court must make an order fixing a time for hearing which shall be not later than ten days after the last day for filing the nomination petition is an encroachment on the judicial function, and thus is considered directory merely and not mandatory. *Socialist Labor Case,* 332 Pa. 78, 80, 1 A. 2d 831 (1938). In that case we said:

"The time within which such questions may be resolved is frequently very short. While courts will respect and follow legislative enactments pertaining to election procedure, they will not do so where such enactments are infringements on the judicial power, or where the provision is clearly incompatible with important judicial business, or impossible of judicial performance. This act requires the court not only to set

a definite day for hearing but to determine and decide, within a fixed time, the various questions presented in election matters.

"The legislature may fix a time within which ministerial acts of procedure must be performed by litigants and parties so that the court may acquire jurisdiction of the subject-matter and the courts will not alter this legislative mandate: Meitner v. Scarborough, 321 Pa. 212, 214; Singer v. Del., L. & W. R.R. Co., 254 Pa. 502, 504; Harris v. Mercur (No. 1), 202 Pa. 313, 316; but where the act to be performed within a fixed time involves the exercise of purely judicial functions, such as hearing and decision of matters properly before the court, or where it is impossible of judicial performance, as was the case here, within the time fixed by the legislature, such provisions will be held to be directory and not mandatory: Election Cases, 65 Pa. 20, 34; Stevenson v. Lawrence, 1 Brewst. 126."

In the case at bar, the appellee's objections to the nomination petitions were timely filed on the seventh day following the last day for filing nomination petitions. In contrast, not only the continued hearing date of March 1, but also the original hearing date of February 28, were beyond the statutory ten day limit. Appellant does not challenge the February 28 date, apparently recognizing that the schedule of the Commonwealth Court would not permit an earlier time.[6] Appellant would have us hold, however, that impossibility of judicial performance is the only circumstance admitting an exception of the ten day requirement, and thus invalidate the continuance in this case merely to permit another attempt at service of process. His re-

---

[6] The entire Commonwealth Court was sitting in Pittsburgh in a scheduled session during the week ending Friday, February 25, 1972.

liance on *Socialist Labor Case, supra,* for this proposition is misplaced. While that case admittedly involved a crowded court docket, it was not limited to such situations; it included within the purview of "purely judicial functions" justifying time extensions the "hearing and decision of matters properly before the court". The scheduling of hearings is definitely a "purely judicial function", as is also the "specifying of the time and manner of notice" which the statute directs the court to include in its order. While no case in this Court has involved this precise question, the decision of the Court of Common Pleas of Dauphin County in *Nomination Petition of Gangewere,* 60 Dauph. 534 (1950) is in point. In that case, as here, a continuance of hearing on objections to a nomination petition to a date four days later, and beyond the statutory ten day period, was ordered after the candidate had challenged the original attempt at service. We accept the reasoning of President Judge RICHARDS in speaking for the court: "We do not agree that the court loses control over the time and manner of giving notice merely because personal service had not been effected by the time set for the hearing, or that a hearing could not be held after that time. Jurisdiction having once attached is retained until the conclusion of the case, both as to notice and as to continuance. . . . [T]he court had complete control to regulate the time and manner of giving notice and the fixing of hearings and the continuance thereof." 60 Dauph. 537, 538.

We note in conclusion appellant's objection to the continuance on grounds that the court's order fixing March 1 as the date for hearing afforded him less than 24 hours after service to prepare his defense to the objections, and thus deprived him of procedural due process. The legislative timetable in §977 of the Code,

however, allows as little as three days between filing objections and a hearing thereon.[7] This period includes the time necessary to obtain a court order fixing the hearing date and directing the mode of service, and the time used in making such service. That the net time span between service and hearing, as provided in the court order, should be 24 hours is not unreasonable under the circumstances. Moreover, appellant knew of the objections to his nomination papers at least by the 28th of February when his counsel appeared at the first hearing. On March 1, when personal service had admittedly been made, appellant could properly have moved for a brief continuance if more time to prepare was deemed necessary. Counsel was present, but made no such motion, even after his challenge to the jurisdiction was overruled; instead he withdrew from further participation because of lack of authority to do more. We think this was an effective waiver of any objection based on shortness of time.

The time available for adjudication of election disputes must necessarily be short. To hold that inability to perfect the initial service of process within the time allowed automatically circumvents all objections to a nomination petition by defeating the court's jurisdiction would produce a far greater distortion of the legislative intent than to permit reasonable extensions of the ten day limit at the court's discretion. We think the lower court was pursuing a judicial function when it exercised its discretion, and that it did so in a reasonable and responsible manner.

Order affirmed.

---

[7] The last day to file objections to a nominating petition is seven days after the last day for filing the nomination petition, and the last day for a hearing on said objections is ten days after the last day for filing the nomination petition.

DISSENTING OPINION BY MR. JUSTICE NIX:

The majority determined the issue to be one of jurisdiction of the court below, and relying upon a decision of the Court of Common Pleas of Dauphin County[1] concluded that jurisdiction, having once attached, is retained until the conclusion of the case. I cannot agree with this decision for the reasons set forth below.

The case before us does not present a question of jurisdiction for it is clear that the subject matter comes within the original jurisdiction of the Commonwealth Court.[2] With respect to jurisdiction, the test " 'is whether the court has power to enter upon the inquiry, not whether it may ultimately decide that it is unable to grant the relief sought in the particular case'. Jurisdiction relates solely to the competency of the court to hear and determine controversies of the class to which the case immediately presented belongs." *American Labor Party Case*, 352 Pa. 576, 581, 44 A. 2d 48, 50 (1945) (citation omitted). *See also Jones Memorial Baptist Church v. Brackeen*, 416 Pa. 599, 602, 207 A. 2d 861, 863 (1965). Therefore, in my opinion the issue is not whether the Commonwealth Court had jurisdiction to hear the petition but whether under the applicable statutory provisions it could grant the continuance, which I believe it could not.

The pertinent portion of Section 977 of the Pennsylvania Election Code, *supra*, note 1, reads as follows: "All nomination petitions and papers received and

---

[1] *Nomination Petition of Gangewere*, 60 Dauph. 534 (1950).

[2] This appeal was conducted pursuant to the Pennsylvania Election Code, Act of June 3, 1937, P. L. 1333, art. IX, §977, as amended, 25 P.S. §2937. This section of the Election Code was amended to place in the Commonwealth Court the jurisdiction previously exercised by the Court of Common Pleas of Dauphin County. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, art. v, §508(a) (57), 17 P.S. §211.508(a)(57) (Supp. 1971).

filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court of common pleas of the county in which the nomination petition or paper was filed, specifically setting forth the objections thereto, and praying that the said petition or paper be set aside. A copy of said petition shall, within said period, be served on the officer or board with whom said nomination petition or paper was filed. Upon the presentation of such a petition, the court shall make an order fixing a time for hearing which shall not be later than ten days after the last day for filing said nomination petition or paper, and specifying the time and manner of notice that shall be given to the candidate or candidates named in the nomination petition or paper sought to be set aside. On the day fixed for said hearing, the court shall proceed without delay to hear said objections, and shall give such hearing precedence over any other business before it, and shall finally determine said matter not later than fifteen (15) days after the last day for filing said nomination petitions or papers." In *American Labor Party Case, supra*, we recognized that the language of this section clearly evidenced a legislative intention to obtain mandatory compliance with these prescribed procedures. It was stated that "[u]nless these requisite procedural steps have been properly performed, the nomination papers are deemed valid and a court is without power to set them aside." 352 Pa. at 579, 44 A. 2d at 50. In *American Labor Party Case* this Court not only recognized the existence of a legislative intention to make these time limits mandatory but also conceded the wisdom of the intention: "Each failure to comply strictly would necessitate judicial determination of a reasonable time, under the circumstances. . . . Matters of vital importance to our popular election system of govern-

ment would be removed from the uniform and definite, and relegated to uncertainty dependent upon a question of degree and relative desirability." 352 Pa. at 580-81, 44 A. 2d at 50. A similar philosophy was expressed in *Turtzo v. Boyer*, 370 Pa. 526, 531, 88 A. 2d 884, 886 (1952), when the Court stated: "It is because the lawmakers of the State were aware of the inertia inherent in an unestimated percentage of the population, and the great harm which can be visited upon others because of that inertia, that it categorically established time limits for the various procedures required in the operation of the Pennsylvania Election Code. Unless time limits were set within which to challenge the results of elections, government would permanently sit on a shaky foundation, and the citizenry would never be certain of the identity of the officeholders chosen to direct and operate the complex activities of the State, County and Municipality."

The only exceptions recognized by the appellate courts to the determination that the time limits set forth in Section 977 are mandatory,[3] prior to the majority opinion in this case were explicitly set forth in *Socialist Labor Case*, 332 Pa. 78, 1 A. 2d 831 (1938), where the Court concluded that "[t]he legislature may fix a time within which ministerial acts of procedure must be performed by litigants and parties so that the court may acquire jurisdiction of the subject matter and the courts will not alter this legislative mandate: but where the act to be performed within a fixed time involves the exercise of purely judicial functions, such as hearing and decision of matters properly before the court, or where it is impossible of judicial performance, as was the case here, within the time fixed by the legis-

---

[3] In both *American Labor Party Case* and *Turtzo* this Court held that the statutory provision requiring the filing of objections within 7 days is mandatory and cannot be waived.

lature, such provisions will be held to be directory and not mandatory." 332 Pa. at 80-81, 1 A. 2d at 832 (footnote omitted) (citations omitted). In *American Labor Party Case,* we acknowledged the "Socialist Labor Case exceptions" as the *only* exceptions. "Clearly, the legislature intended all provisions of Section 977 to be mandatory. It could not, however, constitutionally impose upon the courts mandatory duties pertaining to the exercise of the judicial function [citing *Socialist Labor Case*]. As applied to all others, the provisions are mandatory." 352 Pa. at 580, 44 A. 2d at 50.

A review of the facts in the instant case compels the conclusion that we are here concerned with a ministerial act of procedure which must be performed by the party in accordance with the direction of the statute, and the court, therefore, was without the power to extend the time limit. Respondent-objector filed his objections the last day allowable by statute. The court set the hearing for February 28, 1972.[4] At this scheduled time the court continued the hearing over appellant's objection to afford respondent the opportunity to perfect service. This was obviously not one of the exceptions recognized by the Court in *Socialist Labor Case, supra.* This was not the exercise of a purely judicial function, i.e., the hearing and deciding of the cause. Nor could this conceivably be considered an instance of impossibility of judicial performance. To the contrary, the court had begun to hear the merits of the petition before the defect in service was called to the court's attention.[5]

---

[4] The tenth day after the last day for filing the papers fell on February 25th. However, due to the fact that the schedule of the Commonwealth Court would not permit an earlier time the hearing was set for February 28th. No objection has been raised to this deviation.

[5] There was no finding by the lower court either that the candidate was unavailable for service or that he deliberately avoided

The majority opinion completely reverses the legislative and judicial precedent of requiring mandatory compliance with Section 977 except where the exigencies of *court* business require otherwise. Their reasoning forces the conclusion that all of the provisions of Section 977 are merely directory with the exception of the initial 7 day requirement.

I have no quarrel with the majority's observation that "scheduling of hearings is definitely a 'purely judicial function', as is also the 'specifying of the time and manner of notice. . . .' " I note, however, that here we are not concerned with the scheduling of the hearing on February 28, three days after the statutory limit, nor has there been an objection to the directions regarding the manner of service for the hearing. The present issue arose only after the moving party had failed to effectuate service in the manner and time allotted and the court, for the convenience of the respondent-objector, improperly rescheduled the hearing and altered the original method of service. Justifying this clear distortion of legislative intentions upon the theory that the court having once gained jurisdiction never loses it, is but a weak attempt to disguise judicial legislation by blatantly specious reasoning.

I would reverse the order of the court below and dismiss the petition for failure to comply with the statutory mandates.

---

service. As a practical matter, his admittedly heavy trial schedule would suggest his peculiar accessibility to service of process.