## DeNome Election

*Frank G. Verterano, County Solicitor,* for petitioner.

*George Micacchione,* for respondent.

HENDERSON, *P.J.*, August 25, 1977—On June 6, 1977, the Lawrence County board of elections filed a petition to set aside the primary election of Louis A. DeNome as the Democratic nominee for the office of district magistrate, District 3-4, Lawrence County, Pennsylvania. Mr. DeNome had filed nomination petitions for both the Republican and Democratic primary with the Lawrence County board of elections on the morning of February 28, 1977. The last day for filing such petitions was March 8, 1977. At the primary election held on May 17, 1977, Mr. DeNome received the Democratic but not the Republican nomination.

Both prior and subsequent to the election, numerous allegations had been made to the county board of elections charging that Mr. DeNome was not a resident of District 3-4. The Pennsylvania Constitution, Article V, §12, requires that all justices of the peace, for a period of one year preceding their election or appointment and during their continuance in office, shall reside in their respective districts. Obviously, if these allegations were true, Mr. DeNome would not be qualified to hold the office which he now seeks.

Mr. DeNome had attended several meetings with the county board of elections prior to the primary on the question of his residency. But the board made no decision on this issue until after the primary. Nor at any time prior to the primary was any petition filed with this court objecting to Mr. DeNome's candidacy.

The board of elections held a public hearing on this matter on June 2, 1977, more than two weeks after the primary election. After this hearing, two of the three members of the board reached the conclusion that Mr. DeNome had not established

the residency required by the Constitution. Thereafter, this petition to set aside the results of the primary election was filed.

Mr. DeNome has countered with a petition to strike for lack of jurisdiction and an answer containing new matter alleging a violation of the Sunshine Law. These are presently before us. We need not consider the answer because this court is without jurisdiction to hear this matter at this time.

The major question argued by both parties on the jurisdiction issue is whether section 977 of the Election Code of June 3, 1937, P.L. 1333, as amended, 25 P.S. §2937, governs the procedure to be followed for making objections to a candidate's qualifications. That section reads in pertinent part:

"All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court of common pleas of the county in which the nomination petition or paper was filed . . . specifically setting forth the objections thereto, and praying that the said petition or paper be set aside . . . . If the court shall find that said nomination petition or paper is defective under the provisions of section 976 [25 P.S. §2936], or does not contain a sufficient number of genuine signatures of electors entitled to sign the same under the provisions of this act, or was not filed by persons entitled to file the same, it shall be set aside . . . ."

Section 976 of the Election Code reads in part:

"When any nomination petition, nomination certificate or nomination paper is presented in the office of . . . any county board of elections for filing

within the period limited by this act, it shall be the duty of the said officer or board to examine the same. No nomination petition, nomination paper or nomination certificate shall be permitted to be filed if—(a) it contains material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits; . . . The action of said officer or board in refusing to receive and file any such nomination petition, certificate or paper, may be reviewed by the court of common pleas of the proper county upon an application for a writ of mandamus to compel its reception as of the date when it was presented to the office of such officer or board: Provided, however, That said officer or board shall be entitled to a reasonable time in which to examine any petitions, certificates or papers, and to summon and interrogate the candidates named therein, or the persons presenting said petitions, certificates or papers, and his or their retention of same for the purpose of making such examination or interrogation shall not be construed as an acceptance or filing."

The board relies on Maxman's Nomination Petition, 49 D.&C. 141 (C.P. Phila. 1943) to support its position that these sections of the Election Code do not apply in this case. That case involved a candidate for a Philadelphia councilman's seat who was on active duty in the army at the time. The court there found that it lacked jurisdiction to inquire into Maxman's qualifications for office. The ground of disqualification alleged in that case was not his residency but his position as an officer on active duty in the army.

A much more recent case, coming from the same court, did hold that objections to a nomination for

a Philadelphia councilman, based on the nominee's failure to reside in the city for one year prior to election, must be made within the period required by section 977 of the Election Code: Jaspan v. Osser, 43 D.&C.2d 346 (C.P. Phila. 1967). That case is also similar to the one at hand in that the objection was not filed until after the primary. An appeal of Jaspan was quashed by the Supreme Court without argument or opinion. (An explanation of this is made by Justice Roberts in his concurring opinion in Chalfin v. Specter, 426 Pa. 464, 477, 233 A.2d 562, 568 (1967)). The board's attempt to distinguish Jaspan from Maxman on the ground that Jaspan does not deal with residency requirements imposed by the Constitution fails since the qualifications challenged in Maxman were not based upon the Constitution either.

Besides Jaspan, many other cases have considered objections to a nomination based upon residency requirements under section 977 or its predecessor: Lesker Case, 377 Pa. 411, 105 A.2d 376 (1954); Bobish v. Beaver Cy. Election Bd., 33 Beaver 129, 64 D.&C.2d 34 (1973); In re: Nomination Petition of Miller, 94 Dauph. 186 (1971); Kelly Nomination, 49 D.&C.2d 780 (Dauph. 1970); Robert's Petition, 2 D.&C. 236 (Dauph. 1922). The Lesker, Miller, Kelley and Robert's cases are all particularly noteworthy because they involved candidates for the state legislature. One of the board's primary arguments is that the provisions of the Election Code do not apply in this case because the residency requirements for district magistrates are constitutionally mandated. But state legislators are also required to have resided in their districts for one year prior to their election

by Article II, §5, of the Pennsylvania Constitution. In all the cases cited above, the procedure given in section 977 was followed.

Not all these cases clearly state their grounds for assuming jurisdiction over the residency question in objections to the nominating petition, but this issue was squarely considered in Robert's Petition, supra. Although this case was decided under the predecessor of the present election code, the language of the statute in question was the same as the present section 976, that no nomination petition shall be filed if it contained "[a] material errors or defects apparent on the face thereof, or on the face of the appended or accompanying affidavits . . ." The court construed this to give the court jurisdiction to inquire into any alleged material error; not just those apparent on the face of the petition.

If Mr. DeNome does not meet the residency requirements, there would be a material error in his nomination petition. Section 910 of the Election Code, 25 P.S. §2870, requires that all candidates file an affidavit with their nominating petition stating, among other things, that they are eligible for the office they are seeking. The fact that the election code requires a statement of eligibility when the nomination petition is submitted demonstrates that it is a matter which is to be determined at that time and under the procedure set up by the Election Code.

But even if that portion of section 976 is read as applying only to material errors which are apparent on the face of the petition or affidavit, the election code would still cover this situation. As Justice Roberts explained in his concurring opinion in Chalfin v. Spector, supra, section 977 would cover

underlying defects, such as the ineligibility of a candidate, even if such a defect is not covered by section 976. He read the portion of 977 stating: "If the court shall find that said nomination petition . . . was not filed by persons entitled to file the same, it shall be set aside," to be a "clear legislative catch-all" designated precisely for attacks on eligibility or qualifications of candidates: Chalfin, supra, 426 Pa. at 478, fn. 2.

Under either of these views, jurisdiction to inquire into the qualifications of a candidate is given the court by the Election Code, and when, as in this case, the time limitation of the Code is violated, such jurisdiction is not present. The Pennsylvania Supreme Court has stated several times that the time limit contained in section 977 is mandatory: Turtzo v. Bell, 370 Pa. 526, 88 A.2d 884 (1952); American Labor Party Case, 352 Pa. 576, 44 A.2d 48 (1945). Since the petition by the board of elections was untimely filed, it must be dismissed.

Even if we found that Maxman's Nomination Petition, supra, and not the Election Code, was controlling, it would not dictate a different result. The decision in that case was that the court had no jurisdiction to inquire into the qualifications of a candidate at all. The board wants us to exercise jurisdiction, but it has cited no case where a Pennsylvania court ruled it had jurisdiction to hear objections to a candidate's qualifications outside of the procedure given in the Election Code. This case might be different if Mr. DeNome had won the general election. Then it might be possible to test his right to hold office by a quo warranto proceeding.

At the time the board filed its petition, it was too

late to object under the election code and too early to act under quo warranto. The board asserts that such a situation defies common sense. On the contrary, to allow objections to be filed at any time would seriously undermine the electoral process. Some reasonable time limitations must be set to prevent malicious or patently untrue objections from being filed just prior to an election with the objective of confusing the electorate. The Election Code does provide for a reasonable limitation in section 977, by giving persons until seven days after the last day for filing nomination petitions to make objections. Section 976 allows the election board a reasonable time in which it can examine petitions, interrogate the candidates and determine whether a submitted petition should be filed and accepted. The board of elections in this case did not make a determination within a reasonable time that Mr. DeNome's petition should be rejected. Instead they accepted his petition, had second thoughts about this action, but waited until Mr. DeNome won the Democratic nomination before taking any formal action. This procedure is sadly lacking under the Election Code.

The fact that this petition was filed by the election board rather than by an individual, while unusual, does not remove it from the scope of section 977. Petition of Rittenhouse, 15 Bucks 142 (1965), was a case very similar to the one at hand. There the County Board of Elections filed a petition with the court alleging that Mr. Rittenhouse was ineligible to run for county controller because he had not resided in the county for one year prior to the election. The only differences between that case and this one are that the residence requirements for controllers are statutory rather than written in the

constitution, and that the board of elections in that case filed their petition almost a month prior to the primary. The court then summarily dismissed the petition with a one-paragraph opinion pointing out that the time to file objections was not met and that such provision of the election laws was mandatory.

We reach the same result in this case.

## ORDER OF COURT

Now, August 25, 1977 in conformity with the opinion filed herewith, it is hereby ordered, adjudged and decreed that the petition of the Lawrence County Board of Elections to set aside the primary election of Louis A. DeNome is hereby refused.